## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANA BAEZ,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE HILL AT WHITEMARSH,** | : | **No. 20-5989** |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                 JANUARY  /  /  , 2022

Ana Baez contends that her employer, The Hill at Whitemarsh ("The Hill"), unlawfully terminated her employment based on her national origin. The Hill filed a motion for summary judgment, claiming that Ms. Baez has not established a prima facie case of national origin discrimination and cannot show that The Hill's reason for terminating her employment—failure to pass an English proficiency exam—was a pretext for discrimination. Despite thorough discovery, Ms. Baez has not introduced any evidence that The Hill took action based on her national origin or was motivated by discriminatory animus in making the termination decision. Thus, the Court will grant summary judgment.

### BACKGROUND

Plaintiff Ana Baez was hired as a housekeeper by The Hill at Whitemarsh on July 31, 2018. The Hill is a continuing care retirement community with a mix of retirees living independently, with assisted living, or with skilled nursing care and rehabilitation. On the date of her hiring, Ms. Baez signed a "Position Description for Housekeeper" which included the requirement that each housekeeper "must be able to read, write, speak and understand the English language." Doc. No. 15-3 ("SUMF") ¶¶ 5, 12–13.

1

Although Ms. Baez could not speak English when she was hired, she participated in a program in which The Hill hired non-English speaking employees and paid for them to attend an English language course. Ms. Baez began taking the ESL classes in August 2018 with four other employees of The Hill who could not then speak or understand English. Ms. Baez testified that she did not know any non-English speakers who did not take this course. The course concluded on April 8, 2019 with a final exam. Two of the five students, including Ms. Baez, did not pass the test. Ms. Baez still cannot communicate in English.[1]

Two weeks after the test, Ms. Baez met with the Chief Human Resources Officer, Susan McMenamin, and the Director of Facilities, Mark Toro, who informed her that her employment was terminated based on the test results. Ms. Baez testified that Ms. McMenamin and Mr. Toro told her "they were sorry, but that [she] could not continue working because [she] did not speak English." Def. Ex. B, Tr. at 71:12–15.

Ms. Baez brought this lawsuit alleging a Title VII violation based on national origin discrimination.[2] The Hill moved for summary judgment, arguing that there are no genuine disputes of material fact and that, as a matter of law, Ms. Baez has failed to either establish a prima facie case of national origin discrimination or raise any inference that The Hill's reasons for the English proficiency requirement are mere pretext.

### LEGAL STANDARDS

A court can grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Unsupported assertions, conclusory allegations, or mere suspicions are

---

[1] Ms. Baez used a Spanish interpreter for her deposition in this litigation. Def. Ex. B, Baez Dep. at 1.
[2] Although the Complaint describes the charge as a disability discrimination and retaliation claim under the ADA, the parties agreed at oral argument that this case involves only allegations Title VII national origin discrimination.

insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 888–89 (E.D. Pa. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In order to establish a Title VII claim, the plaintiff must show that "an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988). Where a plaintiff pursues a disparate treatment theory, "the plaintiff is required to prove that the defendant had a discriminatory intent or motive." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Under the *McDonnell Douglas* test, "the plaintiff must first establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their membership in a protected class." *Hukman v. Am. Airlines, Inc.*, 796 F. App'x 135, 141 (3d Cir. 2019) (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (per curiam)). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Summary judgment should "be used sparingly in employment discrimination cases," particularly "when . . . intent is at issue." *Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000). However, "[f]actually unsupported narratives about . . . 'discriminatory animus' do not suffice without more. If it were otherwise, summary judgment would never be appropriate in litigation." *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 348 (M.D. Pa. 2015), *aff'd*, 660 F. App'x 149 (3d Cir. 2016).

## DISCUSSION

The Hill argues that Ms. Baez has not established a prima facie case of national origin discrimination and that, even if she had made out a prima facie case, she has not introduced evidence to call The Hill's non-discriminatory justification into question as pretext. In her Complaint, Ms. Baez identified herself as "a Spanish speaker from the Dominican Republic." Doc. No. 1 ¶ 10. After oral argument, she defined her protected class broadly as Spanish-speaking (or "Hispanic") employees. Doc. No. 29, at 2. Therefore, Ms. Baez must demonstrate that the termination of her employment gave rise to an inference of discrimination against *Spanish-speaking* employees (at the prima facie stage) and that The Hill's reliance on the importance of English proficiency as its non-discriminatory reason is mere pretext for discriminatory animus.

## I.    Prima Facie Case

To raise an inference of intentional discrimination, "a plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action." *Greene v. V. I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

### A. Comparator Evidence

Ms. Baez has not introduced any comparator evidence.  The Hill administered the English proficiency exam to all employees enrolled in the language class.  All five employees enrolled in the class were Spanish-speaking:  three Spanish-speaking employees passed and were retained, while two Spanish-speaking employees failed and had their employment terminated.  While Ms. Baez alleged in her complaint that "[o]ther employees who spoke foreign languages–such as Russian and Polish–were not required to take the course [and] [o]nly the Spanish speaking employees were," she testified that she was not aware of any people at The Hill who spoke Russian or Polish but not English and disavowed this paragraph from her complaint at her deposition.  Doc. No. 1 ¶ 14; SUMF ¶ 19.  At oral argument, her counsel conceded that there was no evidence to support this allegation.  The Hill maintains that the English proficiency requirement "applies to all Housekeepers" and it has not had any Housekeepers who spoke only Russian or only Polish without English proficiency.  SUMF ¶ 20.

### B. Circumstantial Evidence

In the absence of comparator evidence, the circumstantial evidence must establish a causal nexus between the protected class and termination decision.  It is undisputed that Ms. Baez cannot speak English.  Nor does she dispute that her failure to pass the English test was the sole reason for the termination decision.  *Compare* SUMF ¶ 27 *with* Doc. No. 18-2 ¶ 27.  Instead, she argues that the English requirement itself is the evidence of discriminatory intent because it was not reasonably related to her job.

Ms. Baez's complaint boils down to an assertion of language discrimination.  But "[l]anguage is not a protected category under Title VII." *Paradoa v. Phila. Hous. Auth.*, No. 13-cv-6012, 2014 U.S. Dist. LEXIS 75199, at *18 (E.D. Pa. June 2, 2014).  This is because "language

and national origin are not interchangeable." *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 795 (8th Cir. 2010); *K.A.B. ex rel. Susan B. v. Downington Area Sch. Dist.*, No. 11-cv-1158, 2013 WL 3742413, at *10 (E.D. Pa. July 16, 2013) (quoting *Mumid* for same proposition); *see also Kania v. Archdiocese of Phila.*, 14 F. Supp. 2d 730, 733 (E.D. Pa. 1998) (noting that most courts "have agreed that—particularly as applied to multi-lingual employees—an English-only rule does not have a disparate impact on the basis of national origin, and does not violate Title VII"). In her deposition, Ms. Baez testified that she thought The Hill terminated her employment based on language, not her national origin. SUMF ¶¶ 36–37.

Although Ms. Baez argues that discrimination against individuals solely because of a Spanish-speaking background violates Title VII, Doc. No. 29, at 3, there is a difference between discriminating against Spanish-speaking people as a group and requiring all employees to have basic English proficiency. Ms. Baez does not address the fact that The Hill continued the employment of the three Spanish-speaking employees who passed the English proficiency exam. She has not even established whether the other four Spanish-speaking employees who took the test were actually from Spanish-speaking countries. She also conceded at oral argument that her supervisors did not know her national origin. Had she passed the test like the three other Spanish-speaking employees, the evidence clearly shows that The Hill would have continued her employment.

Ms. Baez's argument based solely on the existence of the English exam fails. She argues that an employer who hired Spanish-speaking employees, paid for them to attend English classes for months, and then retained the three Spanish-speaking employees who passed the basic proficiency exam, harbored actionable discriminatory animus against Spanish-speaking employees. She fails to address the fact that one of her supervisors, Mr. Toro, is himself a Spanish-

speaking employee of The Hill.  There is simply no evidence of a causal connection between her membership in a Spanish-speaking group and the termination decision.

Because she has not introduced evidence to support an inference of discrimination based on a protected class, Ms. Baez has not established a prima facie case of national origin discrimination.

## II.     Pretext

Even if Ms. Baez could establish a prima facie case, she cannot overcome The Hill's proffered non-discriminatory reason.  The Hill argues that it has rebutted any prima facie case of discrimination by introducing evidence that English proficiency is necessary for its housekeepers. *See Le. v. City of Wilmington*, 736 F. Supp. 2d 842, 855 (D. Del. 2010) ("An employee's heavy accent or difficulty with spoken English can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance.") (internal quotation marks omitted).  The Hill emphasizes the unique nature of the healthcare setting and maintains that its housekeepers must be able to respond to elderly residents in distress during an emergency.   According to The Hill, the housekeepers are its "eyes and ears" for resident issues because of their contact with the residents in their homes.

To establish pretext, Ms. Baez again argues that English proficiency is not reasonably related to a housekeeper role. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-

discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the

employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764 (citation

omitted). Ms. Baez argues that 1) her positive experience until her termination shows that the

English test was not really necessary, 2) The Hill failed to sufficiently inform her that English

proficiency would be required for her job, and 3) The Hill does not currently use the English test.

### A. Positive Experience Prior to Termination

It is undisputed that Ms. Baez's supervisors felt chagrined about her test results and the

effect on her employment. Mr. Toro, the Director of Facilities, testified that he "was disappointed

that we would lose her." Doc. No. 15-4, Def. Ex. C, Tr. at 55:24–56:1. Ms. Baez testified that

she was "very well treated" leading up to the termination and that Mr. Toro told her they were

sorry about her termination based on the test results. SUMF ¶¶ 28, 34. Recognizing this issue,

Ms. Baez attempts to instead argue that Mr. Toro's positive opinion of her demonstrates

"weaknesses, implausibility, inconsistences, incoherencies, or contradictions" in the justification

provided by The Hill for the termination. Doc. No. 29, at 3 (quoting *Fuentes*, 32 F.3d at 765).

Although creative, Ms. Baez's attempt to spin her supervisor's empathy and kindness into

evidence of his employer's discriminatory animus neglects the key issue: Ms. Baez herself

testified (through an interpreter) that she felt lucky that no emergencies that would have required

English communication skills took place during her tenure. Doc. No. 15-4, Def. Ex. B, Tr. at

120:15–121:6 ("I'm guessing that it was – if it was a dangerous situation, it was possible to

communicate with the boss, but thanks be to God, during the time that I was there everything was

fine and I didn't see anything like that.").[3] By Ms. Baez's own testimony, the relevance of English

---

[3] The Hill notes that Ms. Baez cites the same testimony for the proposition that "Plaintiff was confident if there was a dangerous condition at work, she would be able to properly communicate with her supervisors." Doc. No. 18-3 ¶ 16.

proficiency to handling emergencies with elderly residents was not tested during her employment. The Hill argues that it made a calculated business decision in provisionally hiring some applicants who were not fully qualified, under Mr. Toro's supervision as a bilingual interpreter, with the expectation that they would meet the language requirement after a few months of the English program. The temporary program required Mr. Toro to always be available to interpret, which The Hill maintains was not sustainable in the long-term. A lack of emergencies during Ms. Baez's nine-month tenure does not provide evidence that English proficiency did not really motivate the termination decision.

Ms. Baez introduces no evidence that The Hill harbored discriminatory animus that drove the creation of the English requirement. Rather, the existence of the paid language program indicates exactly the opposite. The Hill argues that if it "intended to discriminate by creating the English proficiency requirement, it would not have spent the time, money, and company resources hiring employees and teaching them a skill that they did not need." Doc. No. 30, at 3. Ms. Baez fails to counter this evidence with any indication of a hidden motive for the English program.

### B. Notice of English Proficiency Requirement

Ms. Baez also argues that insufficient notice of the English language program demonstrates "weaknesses, implausibility, inconsistences, incoherencies, or contradictions" in The Hill's proffered non-discriminatory justification. Specifically, she argues that the English requirements were "never even fully explained to the Spanish-speaking employees," Doc. No. 18-1, at 9, because "the Employee handbook was only generally discussed in Spanish, and no Spanish copy was provided," *id.* at 9–10.[4] Ms. Baez introduces no evidence (deposition testimony or otherwise) to support this claim.

---

[4] Ms. Baez also argues that The Hill contradicts itself by "arguing that these are essential job duties and responsibilities, despite the fact that the testimony indicates the Spanish-speaking employees never received

In rebuttal, The Hill introduces an affidavit by Mr. Toro that he provided a Spanish version of the Position Description to Spanish-speaking employees when they signed the English versions. *See* Doc. No. 25-1.  The Spanish version of the Position Description, which is attached to the affidavit, clearly states the English requirements.  *Id.* at 10.[5]  Ms. Baez introduces no evidence to rebut this affidavit.  Further, she fails to explain why she thought she was being paid to attend English classes if she did not know English proficiency was required for her job.  Therefore, notice of the English proficiency requirement does not provide a basis for a finding of pretext.

### C. Program Cessation

Lastly, Ms. Baez argues that The Hill no longer uses the English proficiency test, which contradicts the purported necessity of English proficiency.  Doc. No. 18-1, at 10.  However, this argument is misleading.  It is undisputed that The Hill is not currently offering *either* the English classes or the English test.  Doc. No. 25, at 8.  Mr. Toro testified that without the English program in place, he does not currently hire applicants who fail to demonstrate English proficiency in the interview process.  Rather than creating evidence of discriminatory animus, this suggests that Ms. Baez was offered an opportunity that subsequent applicants were not:  to attend paid English classes and gain eligibility for continued employment otherwise unavailable to current potential applicants who lack English proficiency in their interviews.  The Hill's continued imposition of the English proficiency requirement in the absence of offering the paid program does not provide evidence of inconsistency or call the necessity of the English requirement into question.

---

any instruction on them."  *Id.* at 10.  Ms. Baez does not clarify to what testimony she refers or cite any support.

[5] The Position Description includes the requirement "Debe poder leer, escribir, hablar y entender el idioma inglés," which is an accurate translation for the English version's explanation of the need to be able to read, write, speak, and understand English.  Doc. No. 25-1, at 10.

Therefore, the Court concludes that no reasonable jury could infer discriminatory animus from the evidence introduced by Ms. Baez.

**CONCLUSION**

For the foregoing reasons, the Court grants The Hill's motion for summary judgment.  An appropriate order follows.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**